**UNITED STATES DISTRICT COURT          EASTERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA            §
                                    §
*versus*                            §          CASE NO. 1:18-CR-56(7)
                                    §
BRIAN HOWARD                        §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Brian Howard's ("Howard") *pro se* Motion for Compassionate Release (#338).   Howard previously submitted two *pro se* requests for compassionate release (#'s 317, 325), which were denied by memoranda and orders signed May 13, 2020 (#321), and January 22, 2021 (#329).   Howard maintains that his health has declined since his initial requests.   The Government filed a Response in opposition to Howard's most recent letter motion and submitted updated medical records (#342).   United States Probation and Pretrial Services ("Probation") conducted an investigation as well as a supplemental investigation and submitted reports.   Having considered the motion, the Government's response, Probation's reports, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.     <u>Background</u>

On July 12, 2018, a grand jury in the Eastern District of Texas returned an Indictment charging Howard and eight codefendants in Count One with Conspiracy to Possess with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 846.   On October 29, 2018, Howard pleaded guilty before a magistrate judge to the sole count of the Indictment pursuant to a written, non-binding plea agreement.   On December 18, 2018, the court adopted the magistrate judge's report and recommendation and found Howard guilty of the offense

charged.  On April 18, 2019, the court sentenced Howard to 151 months' imprisonment, to run consecutively to a prior 120-month term of imprisonment imposed for possession with intent to distribute cocaine base, followed by a 5-year term of supervised release.  Howard's term of incarceration in this case was subsequently reduced to 113 months on May 13, 2020.  Howard is currently housed at the United States Medical Center for Federal Prisoners Springfield ("MCFP Springfield"), located in Springfield, Missouri.  His projected release date is December 19, 2026.

II.    Analysis

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

A.      Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *Jackson*, 27 F.4th at 1089; *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is*

mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Howard asserts in his motion that he has written both the warden and the unit team seeking compassionate release or home confinement but has not received a response.  The record before the court, however, contains no documents or notations substantiating this contention, and Probation reports that Howard has not exhausted his administrative remedies.  In prior responses,

4

the Government also pointed out that Howard had failed to exhaust his administrative remedies. Therefore, Howard is foreclosed in this instance from obtaining relief because there is no indication in the record that he has submitted a request for compassionate release based on the circumstances raised in the pending motion to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust [his] administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"). The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period.  *See Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions,"

whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Accordingly, at this time, the court does not have the authority to grant the relief Howard requests.  Moreover, even if Howard had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must satisfy three criteria.  *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022) ("[A] prisoner seeking compassionate release must overcome three hurdles." (quoting *Jackson*, 27 F.4th at 1089)); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Shkambi*, 993 F.3d at 391; *see Rollins*, 53 F.4th at 358.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at 358. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training,

358; *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes the reasons that qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that

---

medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. Until recently, the Commission has been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). On August 4, 2022, the United States Senate confirmed seven new members to the Commission. Although the Commission now has a quorum for the first time in over three years, it has not promulgated any additional policy statements or amendments to the guidelines.

policy statement governs only motions filed by the Director of the BOP.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  *See Escajeda*, 58 F.4th at 186.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing."  *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Escajeda*, 58 F.4th at 186; *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'"  *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No.

15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)); *see Escajeda*, 58 F.4th at 186. "These terms explain why prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Escajeda*, 58 F.4th at 186 (citing *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)).

1.   <u>Medical Condition</u>

In his current motion, Howard, age 43, contends that he is eligible for compassionate release due to his medical condition.  Howard claims, "I have been suffering with foot ulcers due to my diabetes, chronic and consistent diarrhea due to my current medications, as well as an overall decline in health due to the medical neglect and indifference I am receiving @ Memphis BOP."  He also mentions, "I've also requested to be transferred to a medical facility . . . so I can receive proper treatment."  At the outset, the court notes that Howard was transferred to a federal medical center, MCFP Springfield, on January 13, 2023, where he is receiving daily treatment for his medical problems.

Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected

9

to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Here, according to Howard's Presentence Investigation Report ("PSR"), prepared on February 26, 2019, his medical history includes diabetes, high blood pressure, and neuropathy. His BOP medical records generated on February 23, 2023, reveal that Howard has been diagnosed with hypertension, benign essential (high blood pressure), Type 2 diabetes mellitus with diabetic retinopathy, and foot ulcer secondary to diabetes. He is also obese, with a Body Mass Index ("BMI") of 38.6.[4] Howard is prescribed aspirin and diltiazem to manage his diabetes and hypertension, duloxetine to treat his polyneuropathy and diabetes, insulin injections to control his diabetes, and losartan/hydrochlorothiazide to relieve his hypertension. His prior prescription for lisinopril for hypertension was discontinued in January 2023 due to an adverse drug reaction. Howard's medical records reflect that he tested positive for COVID-19 on December 21, 2020, but had recovered by January 11, 2021. Howard is currently classified as a BOP Medical Care Level 4 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 4 inmates "require services available only at a BOP Medical Referral Center (MRC), which provides significantly enhanced medical services and limited inpatient care. Functioning may be so severely impaired as to require 24-hour skilled nursing care or nursing assistance."

None of Howard's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, his conditions have been well controlled with medication, daily wound care, and the assistance of medical equipment

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

since his arrival at MCFP Springfield.  *See id.*  He has been issued a wheelchair and a glucose meter and is allowed to wear personal soft shoes and sunglasses to assist him in dealing with his diabetes and related foot ulcer.  Howard's 2023 medical records provided to the court reveal that his most recent blood pressure readings (106/65 on February 23, 2023; 122/84 on February 19, 2023; 113/73 on February 16, 2023; 127/80 on February 15, 2023; and 129/85 on February 14, 2023) indicate either that he does not have or is merely "at risk" for high blood pressure.[5]  A medical evaluation report dated January 26, 2023, contains a comment, "BP controlled.  120-140's /80-90."  The court notes, however, that after Howard arrived at MCFP Springfield on January 13, 2023, through February 23, 2023, he was a "No Show" for blood pressure checks on 14 occasions.

Howard's diabetes and associated foot ulcer appear to have improved since his transfer to the medical center.  As the Government points out, his most recent Hemoglobin A1C level (a measure of blood glucose) on January 24, 2023, was 8.7, a marked improvement from his prior reading of 11.3.  A medical record dated January 30, 2023, notes: "Patient feels well.  Reports good efforts for offloading.  States blood sugars have improved and this is confirmed in BEMR.  Patient denied acute wound-related complaints."  An additional entry states, "wound improving."  Similarly, on January 26, 2023, a medical provider related that Howard had "no severe foot pain," no osteomyelitis was reported per 2 MRIs, and his A1C level was 8.7.  The court observes, however, that Howard was a "No Show" for blood glucose checks on 44 occasions and refused the checks on 2 occasions between January 14, 2023, and February 23, 2023.

---

[5] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

In fact, Howard has not been in compliance with his treatment plan at MCFP Springfield. As the Government points out a medical provider commented in a record dated February 2, 2023, "[I]t was communicated by staff that the patient is rarely utilizing his wheelchair and is witnessed ambulating frequently. This was addressed with the patient who admitted he has not been offloading and stated he would comply in the future." Yet, Howard has not lived up to his word. On February 20, 2023, Howard admitted that he got his foot wet, which prompted staff to emphasize to him the importance of keeping his foot dry by using his wheelchair. In their supplemental investigation report, Probation states that on February 28, 2023, Howard initially reported strict compliance with offloading/wheelchair use for mobility. When he was advised that the nursing staff had reported that he rarely uses his wheelchair when he leaves the housing unit and never is seen using it while on the housing unit, Howard recanted, stating that he only used his wheelchair to go to mainline. On March 8, 2023, Howard denied any complaints, stated that he was feeling well, and requested to change his diet from special to regular, but he was advised on his DM (diabetes mellitus) dietary choices. In a medical record dated March 14, 2023, Howard's diabetic foot ulcer was described as "slowly improving." Howard, however, "admitt[ed] to ongoing non-adherence with offloading and dietary restrictions despite multiple counseling sessions with staff. He is unable to identify reasons for his continued neglect of his health." Hence, Howard's ongoing medical problems appear to be, in part, self-induced.

In any event, none of Howard's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Howard's conditions are managed by monitoring, testing, treatment, medication, and medical

equipment.  *See id.*  Howard is able to navigate the facility with the assistance of a wheelchair, is capable of providing self-care in the institutional setting, and, as acknowledged by Probation, is not limited in his activities of daily living.  He is housed in general population, has no work restrictions, is cleared for food service, but is currently medically unassigned.

The court acknowledges that, according to the CDC website, three of Howard's underlying medical conditions—hypertension, Type 2 diabetes, and obesity—can make him more likely to become severely ill should he contract COVID-19 once again; nonetheless, such commonplace maladies do not make Howard's case "extraordinary."  *See Thompson*, 984 F.3d at 434. According to the CDC, 47% of the adults in the United States (116 million) have hypertension, and of those, only about 24% have their condition under control.  In view of its pervasiveness, high blood pressure cannot be deemed "extraordinary" in order to merit compassionate release. *See id.* (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *see also United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) (affirming denial of relief to a prisoner who suffered from hypertension and obesity but whose hypertension was controlled through medication and had not experienced any heart problems since suffering a heart attack eight years previously); *United States v. Reeves*, No. 7:15CR00047-001, 2022 WL 72780, at *1 (W.D. Va. Jan. 7, 2022) (finding that a defendant, who suffered from obesity, diabetes, and cardiomyopathy, had not established extraordinary and compelling reasons for his early release); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for

13

severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Bolze*, 460 F. Supp. 3d 697, 709 (E.D. Tenn. 2020) (holding that extraordinary and compelling circumstances did not exist where the defendant suffered from congestive heart failure, hyperlipidemia, hypertension, cardiomyopathy, and migraine headaches).

Similarly, the CDC reports that 34.2 million people in the United States, approximately 10.5% of the population, have diabetes. Of those, 90 to 95% have Type 2 diabetes. Due to its frequency, diabetes cannot be deemed "extraordinary" in order to merit compassionate release. *See United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from Type 2 diabetes, hypertension, kidney disease, hyperlipidemia, arthritis, and several other medical conditions); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility); *United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying

compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances"); *United States v. Jeffers*, 466 F. Supp. 3d 999, 1007 (N.D. Iowa 2020) (finding that the defendant had not demonstrated extraordinary and compelling circumstances when his diabetes and hypertension were controlled, monitored, and managed by the BOP).

Likewise, CDC statistics show that 42.5% of the adult population in the United States is obese and 73.6% is overweight.  In light of its prevalence, obesity cannot be deemed "extraordinary" in order to merit compassionate release.  *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. Jan. 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

15

Thus, Howard has failed to establish the existence of any medical problems that would constitute extraordinary and compelling reasons to reduce his sentence and release him from prison.

> 2.    COVID-19

Howard seeks reconsideration of the court's prior orders denying his requests for compassionate release.  In his previous motions, Howard expressed concerns regarding the spread of COVID-19 among the prison population and questioned the adequacy of the medical care at the facilities where he was housed.  As of April 3, 2023, the figures available at www.bop.gov list 1 inmate (out of a total inmate population of 1,033) and 2 staff members at MCFP Springfield as having confirmed positive cases of COVID-19 and 264 inmates and 462 staff members who have recovered.   Thus, it appears that the facility where Howard is housed is handling the outbreak appropriately and providing adequate medical care.  In any event, "the current phase of the pandemic is one in which the virus is circulating so widely that [Howard] cannot reasonably expect to avoid coming into contact with COVID-19 outside of custody."  *United States v. Fierro*, No. 2:09-cr-00240-KJD-PAL, 2022 WL 489829, at *3 (D. Nev. Feb. 17, 2022) (quoting *United States v. Rossi*, No. 2:16-cr-00262-JAD-PAL-2, 2022 WL 395001, at *3 (D. Nev. Feb. 9, 2022)).

Although Howard expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Howard, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *Thompson*, 984 F.3d at 435)); *Raia*, 954 F.3d at 597 ("[T]he mere

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

17

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Howard, have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to all inmates and staff who wish to be inoculated. To date, the BOP has administered approximately 349,333 doses of the vaccine. According to www.bop.gov, MCFP Springfield, where Howard is housed, has fully inoculated 1,161 inmates and 438 staff members. Indeed, according to Howard's BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on September 2, 2021, and the second dose on September 30, 2021. In the Fifth Circuit and elsewhere, courts have

denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Gibson*, No. 14-86, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021) ("Courts have held that, once vaccinated, the efficacy of the COVID-19 vaccines preclude[s] the argument that a prisoner's susceptibility to the disease is extraordinary and compelling for purposes of § 3582(c)(1)(A)."); *United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No. 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions

who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

Howard's BOP medical records, however, reflect that he refused a booster dose of the Pfizer-BioNTech vaccine on June 23, 2021, without any suggestion that it was medically contraindicated.  Although Howard has been vaccinated, the court views his rejection of a booster dose as a refusal to provide self-care.  *See United States v. Darby*, No. CR 13-631 (KM), 2022 WL 1423089, at *6 (D.N.J. May 5, 2022) (treating a fully vaccinated individual's decision to refuse a booster dose as a refusal to be vaccinated); *see also United States v. Arroyo*, No. 05-CR-40028-JPG, 2022 WL 2220908, at *3 (S.D. Ill. June 21, 2022) (holding that unless an inmate shows he is unable to benefit from the vaccine, an inmate who refuses a booster, just as an inmate who refuses the vaccine, cannot show that the risk of COVID-19 is extraordinary and compelling).  Hence, Howard cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take advantage of all the available measures to mitigate the risk, such as accepting a booster dose of the vaccine.

It is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693.  In exercising its discretion, the court finds that Howard has failed to establish that his medical condition or the threat of COVID-19 in prison constitute extraordinary and compelling reasons to reduce his sentence and release him from prison at this time.

C.    Section 3553(a) Factors

In addition, the court finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring

courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.  Howard's offense of conviction stems from his participation in a conspiracy to possess with the intent to distribute 50 grams or more of methamphetamine "actual."  Howard served as a distributor for a methamphetamine-trafficking organization based in Beaumont, Texas, that consisted of at least nine members and distributed methamphetamine "actual" from March 2017 to January 2018.  On January 4, 2018, surveillance units observed Howard meet with Codefendant Robinson, who was the leader of the conspiracy.  Law enforcement followed Howard to Lumberton, Texas, where a traffic stop was effected on the vehicle he was driving.  During a search of the vehicle, 207 grams of methamphetamine "actual" were recovered.  Howard was also connected to 28.3 grams of methamphetamine "actual" that were discussed in conversations between members of the drug-trafficking organization that were captured via wire intercept.  Howard was held responsible for a total of 235.30 grams of methamphetamine "actual."

Howard has an extensive criminal history beginning at age 13, which includes prior convictions for criminal trespass, burglary of a building, unauthorized use of a motor vehicle (2x), possession of marijuana, possession of a controlled substance (cocaine) (3x), driving without a license, resisting arrest, and possession with intent to distribute cocaine.  He currently has an outstanding warrant for his arrest in a felony drug case in Hardin County, Texas.  Howard failed to comply with prior terms of probation, parole, and supervised release, and he committed the current offense while on supervised release.  His supervised release was revoked in 2018 when

21

he submitted a urine specimen that was positive for synthetic marijuana.  In *United States v. Boyd*, the defendant had a similar history of violating probation, including committing the offense of conviction while on probation.  No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *3 (E.D. Tenn. Nov. 2, 2021).  The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted."  *Id*.  This court shares the same concerns in reference to Howard.  Moreover, his PSR indicates that Howard accumulated 14 criminal history points, 1 point above the 13 points necessary to be placed in the highest criminal history category.  Howard also has a long history of poly-substance abuse beginning at age 9 or 10, including the use of marijuana, cocaine, crack cocaine, and alcohol.  In short, Howard's "criminal history and conduct reflect an unabated propensity for crime."  *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).  Like the prisoner in *United States v. Jones*, Howard is "the quintessential career offender."  852 F. App'x 60, 61 (3d Cir. 2021).  Indeed, despite his various medical problems, the BOP still assesses him to pose a medium risk for recidivism.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *Chambliss*, 948 F.3d at 693; *Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL

1565352, at *1 (5th Cir. May 18, 2022).  Where, as here, a prisoner has engaged in "severe" criminal conduct and has a long criminal history, the district court has discretion to deny compassionate release under the circumstances.  *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").

In addition, granting Howard compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.*; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had

23

already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord Rodriguez*, 27 F.4th at 1100.  In the instant case, releasing Howard after he has served just over half of his 113-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

In view of the nature and circumstances of his offense of conviction, his extensive criminal history, his repeated failure to comply with prior terms of release on probation, parole, and supervised release, his history of substance abuse, and his risk for recidivism, the court cannot conclude that Howard's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.  As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Howard's track record is similarly a poor one.  There is no reason to believe that Howard would not revert to his prior drug-dealing and drug-abusing behavior as well as engaging in other criminal activities if released from prison at this time.

III.   Conclusion

In sum, Howard has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 113-month consecutive sentence of imprisonment imposed upon Howard for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and

compelling reasons to lessen his sentence or release him from prison at this juncture.  Neither his health, the quality of medical care he has received, nor the threat of COVID-19 in prison merits a reduction of his sentence under these circumstances.

For the foregoing reasons, Howard's *pro se* Motion for Compassionate Release (#338) is DENIED.  In the alternative, Howard's motion is dismissed because he failed to exhaust his administrative remedies before seeking release.

**Signed  this date**

Apr 5, 2023

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE